UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NOOR HUSSAIN,                                    :

               Plaintiff,                 :          REPORT AND
                                                      RECOMMENDATION
       -against-                  :
                                                 13 Civ. 3691 (AJN) (GWG)
COMMISSIONER OF SOCIAL SECURITY,                 :

               Defendant.                 :
------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Noor Hussain brings this action 42 U.S.C. § 1383(c) of the Social Security Act to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI") benefits brought on behalf of his son, whom we refer to as "S.R.R."  Hussain has moved for a remand for further administrative proceedings on various grounds and also seeks a finding that the ALJ constructively reopened his prior application for benefits.  The Commissioner has consented to the remand on some of these grounds but asserts that the Court should not find that the ALJ constructively reopened the prior application.  For the reasons stated below, the parties' motions to remand should be granted in accordance with the limitations expressed in this Report and Recommendation.

I.      BACKGROUND

     A.     Hussain's Claim for Benefits and Procedural History

       Hussain filed an initial application for SSI benefits on behalf of S.R.R. on April 26, 2010. See Administrative Record, filed Nov. 6, 2013 (Docket # 9) ("R."), 112-18.  The application was denied on June 10, 2010, and was not appealed.  R. 145-46.  Hussain filed a second application

1

for SSI benefits on July 19, 2011, when S.R.R. was 13 years old.  R. 100-09.  In this application,

Hussain alleged that S.R.R. had been disabled since June 20, 2002.  R. 100.  This second

application was denied on October 5, 2011, R. 59-64, and Hussain requested a hearing before an

Administrative Law Judge ("ALJ"), R. 73-75.  The ALJ held a hearing on April 5, 2012.

R. 37-57.  On April 26, 2012, the ALJ found that S.R.R. was not disabled, R. 18-33, and the

Appeals Council denied Hussain's request for review, R. 1-3.

On May 31, 2013, Hussain filed this lawsuit seeking review of the ALJ's decision.  See

Complaint, filed May 31, 2013 (Docket # 2).  On January 23, 2014, he filed the instant motion

seeking remand of his July 2011 SSI claim to the Commissioner for further administrative

proceedings as well as a finding that his initial application from April 2010 had been

constructively reopened by the ALJ.  See Plaintiff's Motion to Remand for Further

Administrative Proceedings with Instructions, filed Jan. 23, 2014 (Docket # 17); Plaintiff's

Memorandum of Law in Support of Motion to Remand for Further Administrative Proceedings

with Instructions, filed Jan. 23, 2014 (Docket # 18) ("Pl. Mem."); Plaintiff's Reply

Memorandum of Law in Support of Motion to Remand for Further Administrative Proceedings

with Instructions, filed May 16, 2014 (Docket # 25) ("Pl. Reply").  On April 18, 2014, the

Commissioner filed a cross-motion agreeing that Hussain's July 2011 SSI claim should be

remanded to the Commissioner for further administrative proceedings on some of the grounds

asserted by Hussain but opposing Hussain's request that the Court find that the April 2010

application had been constructively reopened.  See Notice of Cross-Motion, filed Apr. 18, 2014

(Docket # 23); Memorandum of Law in Support of Defendant's Cross-Motion to Remand and in

Response to Plaintiff's Motion to Remand for Further Administrative Proceedings with

Instructions, filed Apr. 18, 2014 (Docket # 24) ("Comm. Mem."); Reply Memorandum of Law

2

in Support of Defendant's Cross-Motion to Remand, filed May 30, 2014 (Docket # 26).

  B.  The Administrative Record Before the ALJ

  We have reviewed the administrative record that was before the ALJ when he decided

Hussain's claim.  Both the Commissioner and Hussain's attorney have provided summaries of

the administrative record in their memoranda of law.  See Pl. Mem. at 3-22; Comm. Mem.

at 2-18.  Neither party has disputed the other party's presentation of the relevant facts.  Thus, we

accept each party's presentation of the facts as accurate summaries of the relevant portions of the

administrative record.

  C.  The ALJ Hearing

  A hearing before the ALJ was held on April 5, 2012.  R. 37-57.  Both Hussain and S.R.R.

testified at the hearing and were represented by attorney Michael Hampden.  R. 37.

  Hussain testified that S.R.R. is in seventh grade and is enrolled in special education

classes containing about 15 to 20 students.  R. 40.  When asked how S.R.R. is doing in his

classes, Hussain responded that S.R.R. is doing "not so well."  R. 40-41.  S.R.R. has trouble

learning some subjects, though he is not having problems getting along with people at his school.

R. 41.  Nevertheless, S.R.R.'s behavior is "not good."  Id.  When S.R.R. returns home from

school, he watches television and "sometime[s]" does his homework.  R. 42.  S.R.R. takes

several medications that help treat his condition, id., and S.R.R. sees a doctor once every two

months, R. 42-43.

  Hampden, Hussain's attorney, asked the ALJ if Hussain could testify about certain

matters outside the presence of S.R.R.  R. 43.  The ALJ agreed and told S.R.R. to "sit outside for

a moment."  Id.  After S.R.R. left the room, Hampden asked Hussain if he makes sure that

S.R.R. "gets his medication as prescribed every day," to which Hussain responded, "[y]es, sir."

3

R. 44.  He then questioned Hussain about whether S.R.R. had "any problems at home with his behavior in relation to his parents and his brothers and sisters."  Id.  Hussain replied that S.R.R. has issues controlling his anger at home.  R. 44-45.  He explained that when he asks S.R.R. to do something like finishing his homework, S.R.R. gets "very angry" and refuses to answer or comply with the request.  R. 45.  Hussain then confirmed that S.R.R. had been diagnosed with "selective mutism" because he sometimes refuses to talk.  Id.  Hussain also testified that sometimes when S.R.R. gets angry he spits at and pushes his parents.  R. 46.

S.R.R. does not have any friends that "he sees after school or on weekends," and he refuses to go outside on weekends.  Id.  S.R.R. only sees his classmates at school because he stays at home after school and on weekends and holidays.  R. 47.  The attorney asked Hussain if S.R.R. sometimes urinates in the garbage and defecates in the bathtub, and Hussain confirmed these statements to be true.  R. 48.  S.R.R. engages in such behavior up to three times every month.  Id.  S.R.R. has been doing this since he was five or six years old.  R. 49.  When Hussain told S.R.R. not to do this, S.R.R. refused to listen and even threatened to run away from home. R. 48-49.

The ALJ noted that, notwithstanding Hussain's testimony about S.R.R.'s anger issues and toiletry problems at home, S.R.R.'s medical records indicated that he has no such issues while at school and that the school evaluations make him sound "like a different kid from the one described by his dad."  R. 50-51.  When asked by the ALJ why S.R.R.'s behavior is so much better at school than at home, Hussain responded that he did not know.  R. 51.  Hussain asserted that S.R.R. has difficulties at school and that his teacher had told him that he was at the level of a fifth-grade student.  Id.  Hussain's attorney clarified that S.R.R. "doesn't have the same kind of aggressiveness, the same kind of oppositional behavior at school that he does at home.  He does

4

have the shyness, the quietness, the selective mutism, all that goes on at school, and these are behaviors that are apparently related to extreme anxiety.  So it may be that something is happening that's quite different there."  R. 52.  When asked if there was any evidence of S.R.R.'s selective mutism in the school records, the attorney pointed out that "[o]ne of the teacher reports does indicate that he does not speak at times."  Id.  The attorney questioned Hussain about whether S.R.R.'s doctors had "suggested that he receive therapy . . . [and] counseling with the doctors in addition to the medications," and Hussain responded that the doctor recommended that S.R.R. should see two different therapists.  R. 53.  However, according to Hussain, they did not follow the doctor's recommendation because S.R.R. refused to see a therapist.  Id.  Hussain testified that even when Dr. Hugh Bases, a doctor from Bellevue Hospital center who treated S.R.R., directly told S.R.R. that he should see a psychiatrist, S.R.R. refused to do so.  R. 54, see R 341.

S.R.R. returned to the hearing room to answer some questions posed by the ALJ.  The ALJ asked S.R.R. if he has any idea what type of work he would like to do when he is older.  R. 55.  S.R.R. initially did not respond to the question, but when the ALJ then inquired, "[y]ou're not sure?" S.R.R. replied, "[n]o."  Id.  The ALJ asked S.R.R. whether he likes any subjects at school, and S.R.R. answered that he likes gym and English but does not like science.  R. 55-56.  The ALJ asked if he likes going outside and playing with the other students at school, and S.R.R. replied, "[y]eah."  Id.  S.R.R. testified that when he gets home from school he does homework and watches television but that he does not play with his brothers and sisters.  Id.

D.    The ALJ's Decision

 After the hearing, Hampden submitted a letter to the ALJ in which he provided additional evidence in support of Hussain's claim on the pending application and also requested

5

that the ALJ reopen Hussain's prior application from April 2010.  R. 234-54.  Specifically,

Hussain's attorney argued that the prior application should be reopened "on the basis of good

cause in that new and material evidence [was] being furnished."  R. 235.  On April 26, 2012, the

ALJ issued a decision finding that S.R.R. is not disabled and thus denying Hussain's claim for

SSI benefits.  R. 18-33.  The ALJ did not discuss either the prior application or Hussain's request

to reopen the prior application.  Id.

> The ALJ found that S.R.R. was an adolescent on the date the application was filed and

that S.R.R. "has not engaged in substantial gainful activity since July 19, 2011, the application

date."  R. 21.  The ALJ determined that S.R.R. suffers from the following severe impairments:

"pervasive developmental disorder, not otherwise specified; selective mutism; borderline

intellectual functioning; and impulse control disorder, not otherwise specified."  Id.  The ALJ

then concluded that S.R.R. "does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1."  Id.  Specifically, he assessed that S.R.R.'s impairments do not meet

"Listing Section 112.10 [on] Autistic Disorder[s] . . . because the record does not show that

[S.R.R.] has the required criteria of qualitative deficits in the development of reciprocal social

interaction, qualitative deficits in verbal and nonverbal communication and in imaginative

activity, and markedly restricted repertoire of activities and interests."  Id.  Additionally, the ALJ

explained that S.R.R. does not satisfy "the listings for 112.02, Organic Mental Disorders; 112.10,

Other Pervasive Developmental Disorders; or 112.06, Anxiety Disorders because he does not

demonstrate two of the following: a marked impairment in age-appropriate

cognitive/communicative function, a marked impairment in age-appropriate social functioning, a

marked impairment in age-appropriate personal functioning, or marked difficulties in

maintaining concentration, persistence, or pace." Id.

The ALJ then considered whether S.R.R.'s impairments functionally equal any of the listings by assessing his functioning in terms of the six domains listed in 20 C.F.R. § 416.926a(b)(1).  R. 21-33.  The domains listed in 20 C.F.R. § 416.926a(b)(1) are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  R. 28-33.  Under 20 C.F.R. § 416.926a(a), an individual must have a marked limitation in two of the domains or an extreme limitation in one domain to be found disabled.  The ALJ determined that S.R.R. has a "less than marked limitation" in acquiring and using information, attending and completing tasks, and interacting and relating with others.  R. 28-30.  The ALJ found that S.R.R. has "no limitation" in moving about and manipulating objects, caring for himself, and health and physical well-being.  R. 31-33.  Thus, the ALJ concluded that S.R.R. "[h]as not been disabled . . . since July 19, 2011, the date the application was filed."  R. 33.

### E.  The Proceeding Before the Appeals Council

Hussain requested review of the ALJ's decision by the Appeals Council.  R. 13-14.  In support of this request, Hussain's attorney submitted additional evidence and once again argued that Hussain's prior application should be reopened.  R. 260-62.  On April 9, 2013, the Appeals Council denied Hussain's request for review without mentioning Hussain's request to reopen the prior application.  R. 1-3.

II.   APPLICABLE LAW

    A.    Scope of Judicial Review under 42 U.S.C. § 405(g)[1]

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation and internal quotation marks omitted); accord Burgess v. Astrue, 537 F.3d 117, 127–28 (2d Cir. 2008); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Burgess, 537 F.3d at 127–28; Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential

---

    [1] Review of Hussain's claim is governed by 42 U.S.C. §405(g). See 42 U.S.C. § 1383(c)(3) (incorporating the judicial review procedures contained in section 405(g)).

standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec.

Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted).  "The substantial

evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a

reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citation and

internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and

substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d

at 454 (citations and internal quotation marks omitted).

      B.     Legal Standard Governing Evaluation of Disability Claims for Children

      To qualify for SSI, a child under the age of eighteen must have "a medically

determinable physical or mental impairment, which results in marked and severe functional

limitations, and which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The

Social Security Regulations provide a three-step sequential analysis to determine whether a child

is disabled and therefore eligible for SSI.  20 C.F.R. § 416.924(a)-(d); see Pollard v. Halter, 377

F.3d 183, 189 (2d Cir. 2004).  First, the ALJ is to consider whether the child is engaged in

"substantial gainful activity."  20 C.F.R. § 416.924(b).  Second, the ALJ considers whether the

child has a "medically determinable impairment(s) that is severe," which is defined as an

impairment that causes "more than minimal functional limitations."  Id. § 416.924(c).  Finally, if

the ALJ finds a severe impairment, he or she must then consider whether the impairment

"medically" or "functionally" equals a disability listed in the regulatory "Listing of

Impairments."  Id. § 416.924(c), (d); see also id. Pt. 404, Subpt. P, App. 1.

      To demonstrate functional equivalence, the child must exhibit "marked" limitation in two

of the six functional domains described in the regulations or "extreme" limitation in one of the

domains.  Id. § 416.926a(a); see also Pollard, 377 F.3d at 190.  The first five domains consider

the child's ability to acquire and use information, attend and complete tasks, interact and relate

with others, move about and manipulate objects, and care for himself.  20 C.F.R.

§ 416.926a(b)(1)(i)-(v).  The sixth domain considers the child's health and physical well-being.

Id. § 416.926a(b)(1)(vi).

A child has a "marked" limitation when the impairment "interferes seriously with [the

child's] ability to independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(2)(i).

"'Marked' limitation . . . means a limitation that is 'more than moderate' but 'less than

extreme.'"  Id.  An "extreme" limitation exists when the impairment "interferes very seriously

with [the child's] ability to independently initiate, sustain, or complete activities."  Id.

§ 416.926a(e)(3)(i).

III.    DISCUSSION

A.    Hussain's Motion to Remand

In his memoranda of law, Hussain argues that the ALJ committed the following errors

requiring remand: (1) the ALJ misapplied the treating physician rule when he rejected Dr.

Bases's opinion; (2) the ALJ failed to adequately explain his finding that S.R.R. did not meet the

listings for autistic disorder and pervasive development disorder; (3) the ALJ failed to give

adequate reasons for rejecting Hussain's testimony as to his son's disruptive behavior at home;

(4) the ALJ erred in failing to find that autism was one of S.R.R.'s severe impairments; and (5)

the ALJ failed to adequately consider S.R.R.'s structured educational setting when assessing

S.R.R.'s abilities to acquire and use information, attend and complete tasks, and interact and

relate with others.  See Pl. Mem. at 25-51; Pl. Reply at 13-17.  With regard to Hussain's first

asserted ground for relief, the Commissioner agrees that remand is appropriate because "the

ALJ's decision did not provide sufficient analysis of the opinion by treating physician Dr.

Bases." Comm. Mem. at 21. Additionally, as Hussain has pointed out in his reply

memorandum, the Commissioner has not specifically disputed Hussain's second and third

grounds for relief.[2] See Pl. Reply at 13-14. Accordingly, remand should be granted for further

administrative proceedings to address these issues. Because the Commissioner objects to

Hussain's fourth and fifth grounds for remand, we address the merits of those grounds.

1.    Failure to Include Autism as a Severe Impairment

Hussain asserts that "[t]he omission of Autistic Disorder as a severe impairment by the

ALJ constituted legal error for three reasons: (1) the ALJ misstated the evidence by

misunderstanding the meaning and intent of an examiner who acknowledged a prior diagnosis of

Autistic Disorder but said she did not see evidence of it in her evaluation sessions . . . (2) the

ALJ, without explanation, improperly credited statements by examiners and reviewers who are

not acceptable medical sources, over those of treating and examining physicians . . . and (3) the

ALJ improperly substituted his own layman's judgment for competent medical opinion." Pl.

Mem. at 28. In response, the Commissioner argues that the ALJ properly relied on the opinion

of State agency psychologist R. Nobel in not including autism as a severe impairment because

"agency regulations expressly state that '[l]icensed or certified psychologists' are 'acceptable

medical sources.' i.e. medical sources 'who can provide evidence to establish an impairment.'"

---

[2] With regard to the third ground for relief — that the ALJ failed to adequately explain his basis for rejecting Hussain's hearing testimony regarding S.R.R.'s behavior at home — the Commissioner responded that "the ALJ properly considered the difference between SRR's reported behavior at home and in other environments." Comm. Mem. at 23. However, the Court considers this ground for remand to be unopposed because the Commissioner has not otherwise addressed the merits of this argument, instead stating that "the Court need not reach this issue insofar as the parties are in agreement that the claim should be remanded for further consideration of the record as a whole." Id.

Comm. Mem. at 22 (quoting 20 C.F.R. § 416.913(a)).  Additionally, the Commissioner contends that, to the extent that the ALJ erred in not including autism as a severe impairment at step two of his analysis, this error was "harmless" because the ALJ "considered SRR's asserted autistic disorder 'during the subsequent steps.'"  Id. at 23 (quoting Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013)).

        In our view, this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that autism should not be included as a "severe impairment."  See generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under the applicable regulations, a "medically determinable impairment" is considered to be "severe" if it causes "more than minimal functional limitations."  20 C.F.R. § 416.924(c).  Here, there was substantial evidence supporting the ALJ's conclusion that S.R.R. does not suffer from autism to a degree that causes him "more than minimal functional limitations."  For example, a Comprehensive Psychological Evaluation from June 2010 signed by Melissa Savage, M.S.Ed., and licensed psychologist Glenn Ellenborgen reports that, although S.R.R. had previously been diagnosed with autism, he "did not show any indicators of an Autism Spectrum Disorder during the current session."  R. 280.  Because of this observation, Savage and Ellenborgen referred S.R.R. "for a psychiatric evaluation to reassess his prior diagnosis of an Autism Spectrum Disorder and to explore reported behavior difficulties."  R. 281.  Additionally, in a Childhood Disability Evaluation Form from September 2011, State agency psychologist R. Nobel noted that S.R.R. "did not show any indicators of an autism spectrum disorder" when he had been examined by Savage.  R. 295.  Nobel appears to have adopted this finding in recommending that S.R.R. should not be found disabled.  Id.  Moreover, Nobel implicitly recognized that Savage's

12

assessment was consistent with Nobel's own observations that S.R.R. had appropriate eye contact, neutral mood, speech and thought process within normal limits, average cognitive functioning, sensorium and orientation within normal limits, intact attention and concentration, intact recent and remote memory skills, and age-appropriate insight and judgment.  Id.

Hussain asserts that the Savage report should not have been characterized by the ALJ as "disput[ing] the earlier diagnosis of Autistic Disorder, as her recommendations included . . . [a] [r]eferral for a psychiatric evaluation to reassess his prior diagnosis of an Autism Spectrum Disorder."  Pl. Mem. at 27.  But the ALJ's statement that the "claimant did not show any indicators of an Autism Spectrum Disorder during the session [with Savage]," R. 23, is almost a direct quote from the Savage report, R. 280.  Moreover, the ALJ reasonably interpreted Savage's recommendation as suggesting that Savage believed that the prior autism diagnosis was incorrect.

We also reject Hussain's assertion that the ALJ could not properly have relied on these medical sources because the "regulations provide that only licensed physicians are acceptable medical sources qualified to provide evidence to establish a medical impairment."  Pl. Mem. at 27.  As the Commissioner has noted, this argument is based on an incorrect legal premise.  In fact, the regulations explicitly list "Licensed or certified psychologists" among the "acceptable medical sources to establish whether you have a medically determinable impairment(s)."  20 C.F.R. § 416.913(a)(2); accord Anderson v. Colvin, 2013 WL 5939665, at *3 (N.D.N.Y. Nov. 5, 2013) (noting that "'[a]cceptable' medical sources are licensed physicians (medical or osteopathic doctors), psychologists . . ." and that "[a]n acceptable medical source opinion or diagnosis is necessary to establish existence of a medically determinable impairment") (citations omitted); Carthens ex rel. S.D.C. v. Astrue, 2011 WL 3463158, at *5 n.104 (S.D.N.Y. Aug. 5,

13

2011) ("'Acceptable medical sources' include licensed physicians, licensed psychologists, and qualified speech-language pathologists.") (citation omitted).

Finally, we reject Hussain's conclusory assertion that "the ALJ improperly substituted his own layman's judgment for competent medical opinion." Pl. Mem. at 28. In fact, the ALJ's determination was supported by evidence from appropriate medical sources, including the June 2010 Comprehensive Psychological Evaluation, which was co-signed by licensed psychologist Glenn Ellenborgen, and the September 2011 Childhood Disability Evaluation Form, which was completed by a State agency psychologist. Thus, there was substantial evidence to support the ALJ's determination that autism should not be included as one of S.R.R.'s severe impairments.

2.     Failure to Consider S.R.R.'s Structured Educational Setting

Hussain also argues that "in the domain of acquiring and using information, attending and completing tasks, and interacting and relating with others, the ALJ failed to consider the effects of S.R.R.'s structured educational setting on his functional limitations." Pl. Mem. at 47.

In assessing whether a child's impairment or combination of impairments "results in limitations that functionally equal the listings," an ALJ is required to consider, among other factors, "the effects of structured or supportive settings." 20 C.F.R. § 416.926a(a)(1). The regulations explain:

> (A) If you have a serious impairment(s), you may spend some or all of your time in a structured or supportive setting, beyond what a child who does not have an impairment typically needs. (B) A structured or supportive setting may be . . . your classroom at school, whether it is a regular classroom in which you are accommodated or a special classroom . . . . (C) A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate

14

level without the structured or supportive setting.  (D) If you have a chronic impairment(s), you may have your activities structured in such a way as to minimize stress and reduce the symptoms or signs of your impairment(s) . . . . We will consider whether you are more limited in your functioning than your symptoms and signs would indicate.  (E) Therefore, if your symptoms or signs are controlled or reduced in a structured setting, we will consider how well you are functioning in the setting and the nature of the setting in which you are functioning (e.g., home or a special class); the amount of help you need from your parents, teachers, or others to function as well as you do; adjustments you make to structure your environment; and how you would function without the structured or supportive setting.

Id. § 416.924a(b)(5)(iv).  As Hussain correctly notes, courts have found remand appropriate where an ALJ fails to consider the effects of a structured setting on the child's symptoms or how that child would function outside of the structured setting.  See Smith ex rel. J.H. v. Colvin, 935 F. Supp. 2d 496, 505 (N.D.N.Y. 2013) (remanding where the ALJ noted "the far-reaching accommodations made for [the child] to enhance her everyday schoolwork and test-taking but failed to put these into context with [the child's] overall functioning in the 'acquiring and using information' domain"); Dunaway ex rel. E.B.B. v. Astrue, 815 F. Supp. 2d 624, 627-28 (W.D.N.Y. 2011) (the ALJ's findings lacked substantial evidence where the ALJ did not "consider[ ] the effect of [the child's] highly structured and supported educational environment on her learning disability symptoms, or assessed its effect on her academic progress").  At the same time, courts have acknowledged that the ALJ need not explicitly discuss this factor.  See Watson ex rel. K.L.W. v. Astrue, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5, 2008) ("While the ALJ must consider how a child would function outside of a supportive setting, the regulation does not command the ALJ to explicitly discuss his consideration of these factors in the decision.") (internal punctuation and citations omitted); accord Walker ex rel. J.B. v. Astrue, 2010 WL 2287566, at *10 (N.D.N.Y. June 3, 2010) (same).

Here, the ALJ discussed "the effects of a structured or supportive settings" when

summarizing the relevant school and medical evidence in S.R.R.'s record.  The ALJ stated that

there were several "individualized education programs (IEPs)" in the record which "consistently

state that [S.R.R.] has been classified with a learning disability, and that he is in a collaborative

team teaching classroom with related services."  R. 25.  The ALJ explained that one of these

IEPs noted that S.R.R. "works well with a partner who can help guide him, and that if he is

working with too many people he can get easily distracted . . . [and that] his behavior is age

appropriate, that it is managed with a consequence and reward system, and that he does very well

with the system."  Id.  Additionally, the ALJ observed that S.R.R. had "been given special

accommodations on state and local assessments."  Id.  Thus, the ALJ's opinion not only

identified the special attention and structured environment that the school provided to S.R.R. but

also recognized the effect that these accommodations had on S.R.R.'s functioning.

Moreover, the ALJ implicitly acknowledged the discrepancy between S.R.R.'s symptoms

in and out of this structured environment when he repeatedly contrasted S.R.R.'s good behavior

at school with his problematic behavior at home.  For example, the ALJ noted, "[i]n terms of

[S.R.R.'s] alleged behavioral problems, it appears that the claimant has issues primarily at home

but not at school or in other places."  R. 23.  Additionally, the ALJ recognized that "Dr. Karen

Hopkins noted that [S.R.R.] did not have any behavior problems at school, and that a form

returned to them [by the school] make[s] him sound like a different kid than the one described by

his dad."  R. 24.  Finally, when finding that S.R.R. had "less than marked limitation" in his

ability to acquire and use information, the ALJ referenced the aforementioned IEPs and

explicitly noted that S.R.R. "needs extra help" at school.  R. 28-29.  Similarly, in assessing

S.R.R.'s ability to attend and complete tasks, the ALJ once again referenced the IEPs and noted

that S.R.R. has been given "special accommodations on testing."  R. 29.  In these circumstances,

where the ALJ acknowledged that S.R.R.'s school had provided him with a structured environment and other accommodations and where the ALJ further recognized the discrepancy between S.R.R.'s behavior in and out of the structured school environment, we conclude that the ALJ gave adequate consideration to this factor.  Cf. Watson, 2008 WL 3200240, at *5 ("Although the ALJ did not explicitly address the issue of how she might function outside of structured settings, he considered all of the medical, non-medical, and educational evidence presented by the plaintiff."); see also Johnson ex rel. A.J. v. Astrue, 2013 WL 1187436, at *15 (S.D.N.Y. Mar. 22, 2013) (upholding ALJ's decision where he "was indisputably aware that [the child] was in a structured setting" and implicitly compared the child's functioning inside and outside of the structured setting, even though he did not "explicitly discuss structured settings in his opinion").

   B. Constructive Reopening of Prior Application

  As noted, Hussain filed an initial application for SSI benefits on April 26, 2010 ("the prior application"), which was denied on June 10, 2010.  R. 112-18, 145-46.  Hussain filed a second application for SSI benefits on July 19, 2011.  R. 100-09.  Hussain argues that, in ruling on the second application, the ALJ constructively reopened the first application by not specifically denying a request he had made to reopen it and by relying on the entire medical record, including documents relating to the first application, in reaching the conclusion that S.R.R. is not disabled.  See Pl. Mem. at 51-54.

  In general, "when a claimant takes no action to review a decision of an ALJ, that decision becomes final and binding on the parties," and "such a decision is administratively res judicata as to all matters decided therein."  Lewis v. Sec'y, Dep't of Health, Educ. & Welfare, 503 F. Supp. 1177, 1180 (S.D.N.Y. 1980) (internal citation omitted); accord 20 C.F.R. § 404.987(a).

Thus, "where a claimant seeks to reopen a claim where a final decision has been rendered, the Commissioner may refuse such a request under the doctrine of res judicata." Saxon v. Astrue, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011) (emphasis omitted ) (citing Dunn v. Astrue, 2010 WL 376390, at *3 (W.D.N.Y. Jan. 27, 2010)).  In Califano v. Sanders, 430 U.S. 99 (1977), the Supreme Court held that 42 U.S.C. § 405(g) does not authorize judicial review of an agency's refusal to reopen a claim for social security benefits, stating that "Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of state eligibility claims."  430 U.S. at 108. However, an exception to this rule exists "where the Commissioner has constructively reopened the case."  Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003).  The Second Circuit in Byam described the doctrine of constructive reopening as follows: "[i]f the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived and thus, the claim is subject to judicial review."  Id. (internal punctuation and citations omitted).

Hussain argues that his first application was constructively reopened because the ALJ's decision "did not deny plaintiff's reopening request either explicitly or implicitly" and because "the ALJ accepted for the record all of plaintiff's proffered evidence pertaining to the reopening issue, including the [prior] application, a questionnaire completed by plaintiff in support of the [prior] application, the notice of disapproved claim, and much medical and school evidence relevant to the initial application period."  Pl. Mem. at 52.  Hussain notes also that "three full pages of the ALJ's decision addressed, on the merits, evidence relevant specifically to the [prior] application."  Id. at 53.  In Hussain's view, his prior application was reopened because "when the ALJ makes his decision treating the two distinct application periods as an entirety, and gives

18

consideration on the merits to evidence from the prior period, that prior claim is deemed constructively open."  Pl. Reply at 5.

We do not believe that the constructive reopening doctrine sweeps so broadly.  The doctrine is premised on the notion that the agency has "waived" its right to assert res judicata as a bar to the reconsideration of a previously-denied application.  Byam, 336 F.3d at 180; accord Copeland v. Barnhart, 41 F. App'x 914, 916 (9th Cir. 2002) ("[T]he Commissioner waives the defense of res judicata where he constructively reopens a disability claim."); Kasey v. Sullivan, 3 F.3d 75, 78 (4th Cir. 1993) (noting that a constructive reopening occurs when "a claim that otherwise would be barred by res judicata has been, in effect, reconsidered on the merits at the administrative level").  Such "waiver" logically occurs where the ALJ reconsiders the merits of the prior application as if the prior adverse determination were not binding on the claimant.  Where the ALJ engages in such reconsideration, it is plain that the agency is proceeding as if the res judicata doctrine and the governing regulation have no applicability.  However, there is no reason to infer such a waiver where the ALJ reaches the merits of only the second application and not the prior application inasmuch as such conduct is fully consistent with the ALJ's reliance on the res judicata bar.

The articulation of the constructive reopening doctrine in Byam is in accord with this view.  The Second Circuit in Byam stated that it agreed with the district court that the ALJ had "not constructively reopened the previous applications, because he had not ruled on their merits" — referring to the fact that the ALJ had not ruled on the merits of the "previous application."  336 F.3d at 180.  Byam further noted that the applicant had "point[ed] to language that, when read in isolation, suggest[ed] that the ALJ may have considered the merits of the earlier applications."  Id. (emphasis added).  Byam cites the Fourth Circuit case of McGowen v. Harris,

666 F.2d 60 (4th Cir. 1981), which reiterates this view: namely, that a previously denied claim is properly treated as reopened only when that prior claim has "been reconsidered on the merits." 666 F.2d at 65; see also id. at 66 ("[J]urisdiction exists only if the original claim was administratively reopened by reconsidering it to some extent on the merits.").

Here, it is clear from the ALJ's opinion that his discussion of the evidence submitted with the prior application was solely for the purpose of resolving the merits of Hussain's second application, dated July 19, 2011.  While the ALJ did not explicitly reject Hussain's request to reopen the prior application, his decision can only be read as addressing only the second application.  For example, at the outset of his opinion, the ALJ noted that "[o]n July 19, 2011, an application for supplemental security income was protectively filed on behalf of the claimant" but made no mention of the prior 2010 application.  R. 18.  In determining whether S.R.R. "engaged in substantial gainful activity" as required by step one of the three-step sequential evaluation process, see 20 C.F.R. § 416.924(b), he considered only the time period since July 19, 2011, which he referred to as "the application date," R. 21.  Finally, at the close of his opinion, the ALJ concluded that S.R.R. "has not been disabled . . . since July 19, 2011, the date the application was filed."  R. 33.

Hussain posits that a constructive reopening occurs whenever the ALJ "gives consideration on the merits to evidence from the prior period."  Pl. Reply at 5 (citing McGowen, 666 F.2d at 65).  This, however, presupposes that an ALJ necessarily reaches the merits of a prior application when it considers evidence from that prior period.  On the contrary, ALJs regularly review prior evidence for the purpose of considering an open application, as such evidence is often relevant to the claimant's medical condition for the period in which benefits are claimed.  In fact, there are many instances where an ALJ must consider such prior evidence to

20

properly assess the severity of the claimant's medical condition during the open application period.  See DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998) ("[B]y statute, the ALJ was required not only to develop [the applicant's] complete medical history for at least the twelve-month period prior to the filing of his application, but also to gather such information for a longer period if there was reason to believe that the information was necessary to reach a decision.") (citing 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(d)); Patterson v. Astrue, 2013 WL 638617, at *7 (N.D.N.Y. Jan 24, 2013) (an ALJ must examine a claimant's complete medical history "for at least twelve months prior to the filing of an application for benefits, and longer if necessary to reach an informed decision"); see also Lee v. Barnhart, 117 F. App'x 674, 680 (10th Cir. 2004) (ALJ failed to adequately develop the record where ALJ made no attempt to acquire "pertinent evidence outside the twelve-month period, [that was] essential to a determination of disability").  Given this reality, a court should not infer that an ALJ considered the merits of a prior application simply because the ALJ reviewed medical evidence dating from the prior application period.

Indeed, because Hussain alleged in his second application that S.R.R.'s disability first arose on June 20, 2002, R. 18, it was logical for the ALJ to examine evidence concerning S.R.R.'s medical condition as of that date to determine the existence and severity of his condition as of the time the second application was filed.  Such records provided important background information about S.R.R.'s condition and helped put into context the medical reports that were compiled during the time for which benefits were claimed.  In other words, this is not a case where the documents submitted in a prior application concerned a distinct medical condition or where they otherwise contained information irrelevant to the disposition of a subsequent application.  In these circumstances — where there was good reason to examine the

medical evidence from the prior period to adjudicate the second application and where the ALJ explicitly recognized that his findings addressed only the second application — the Court cannot properly infer that the ALJ "render[ed] a decision on the merits" of the prior application.  See Byam, 336 F.3d at 180.

Case law is in accord with this view.  For example, Grant v. Shalala, 1995 WL 322589 (W.D.N.Y. Mar. 13, 1995), considered a claimant's request to deem an application constructively reopened simply because, in adjudicating a later application, the ALJ had considered evidence from the earlier period.  1995 WL 322589, at *7.  Grant held that "there is no reopening of an application where the ALJ discusses prior proceedings and evidence only to describe a claimant's background, and not to review the merits of the prior application."  Id.; accord Saxon, 781 F. Supp. 2d at 99 (N.D.N.Y. 2011) ("A matter is not constructively reopened when the ALJ merely discusses prior proceedings and evidence to describe a claimant's background.").  As is true here, the ALJ in Grant "referred to the earlier evidence while setting forth [the claimant's] medical history" but "did not make any assessment on the merits as to whether [the claimant] was disabled as of [the date of the earlier application]," instead "expressly stating his opinion only on [the claimant's] disability status as of" the time of the subsequent application.  1995 WL 322589, at *7.  Grant thus denied the claimant's request to deem the earlier application constructively reopened.  Other cases are consistent with the reasoning in Grant.  See, e.g., Boone v. Apfel, 1999 WL 668253, at *4 (10th Cir. Aug. 26, 1999) (finding that prior claim was not reopened where ALJ "considered all of the evidence in the file to assess [the claimant's] condition during the time period relevant to the application at issue"); King v. Chater, 90 F.3d 323, 325 (8th Cir. 1996) ("Mere consideration of evidence from an earlier application is not considered a reopening of the earlier claim.") (citing Boock v. Shalala,

22

48 F.3d 348, 352 n.4 (8th Cir. 1995)); <u>Kasey</u>, 3 F.3d at 78 (finding that a constructive reopening had not occurred where "[a] full and fair examination of [the applicant's] mental impairment claims necessarily required [the ALJ] to consider extensively the same evidence and testimony as to mental impairments that had been offered in support of [the applicant's] previous applications"); <u>Rohrich v. Bowen</u>, 796 F.2d 1030, 1031 (8th Cir. 1986) ("[The ALJ's] review of [the claimant's] medical history does not amount to the reconsideration 'on the merits' necessary to constitute a de facto reopening of the earlier application . . . [because] [t]hese matters, rather, were simply preliminary facts required to assess rationally the question at issue, i.e., whether [the claimant] was disabled at the time of the second application.") (emphasis omitted); <u>Capron v. Comm'r of Soc. Sec.</u>, 2014 WL 581711, at *3 n.4 (N.D.N.Y. Feb. 14, 2014) (finding that "no constructive reopening occurred" where ALJ considered evidence from the prior application "strictly for purposes of background and comparison for a perspective of the current medical evidence" and specifically stated that she was not reopening the prior application); <u>Baxter v. Astrue</u>, 2011 WL 666362, at *4 (W.D. Wash. Jan. 18, 2011) (determining that no constructive reopening occurred because "it is clear that in this case the ALJ evaluated the evidence in the record solely for the purpose of determining plaintiff's disability with respect to his most recent application for disability benefits without actually reconsidering the merits of plaintiff's prior application") (internal quotation marks and citation omitted); <u>Girard v. Chater</u>, 918 F. Supp. 42, 44 (D.R.I. 1996) ("An ALJ 'is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application.'") (quoting <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 193 (1st Cir. 1987)).

      The cases cited by Hussain, <u>see</u> Pl. Mem. at 51-52; Pl. Reply at 3-5, 7-8, do not dictate a

different result.  <u>Malave v. Sullivan</u>, 777 F. Supp. 247 (S.D.N.Y. 1991), found a constructive

reopening where, as in our case, the ALJ did not state in his decision whether or not he was

reopening the prior application and reviewed the entire record in making a disability

determination.  <u>See</u> 777 F. Supp. at 252.  As was also true here, the ALJ relied on medical

evidence that was seemingly relevant to both the later and original applications.  However, the

ALJ in <u>Malave</u> explicitly denied disability benefits for the period from the first application to the

year prior to the second application.  <u>Id.</u> at 250.[3]  There would have been no need to make such a

determination unless the ALJ was considering the entire time period encompassed by the two

applications.  <u>See also id.</u> (ALJ made a specific finding that the claimant was "not disabled for a

portion of the period he claims, and disabled for another portion").

  In <u>Guy v. Sullivan</u>, 736 F. Supp. 1255 (W.D.N.Y. 1990), the claimant filed an application

in 1982 and a subsequent application in 1986.  736 F. Supp. at 1256.  Although the ALJ did not

specifically refer to the merits of the prior applications in its decision, the ALJ implicitly reached

the merits of the prior application when the ALJ determined that the claimant was entitled to

disability benefits from 1981.  <u>Id.</u> at 1259.  <u>Taylor for Peck v. Heckler</u>, 738 F.2d 1112 (10th Cir.

1984), involved an application for surviving child's insurance benefits rather than an application

for disability insurance benefits.  738 F.2d at 1113.  <u>Taylor</u> found the first and second

applications to be identical for purposes of res judicata because they involved the identical and

static issue of the child's paternity.  <u>Id.</u> at 1113-14.  Because the second application was a

---

[3] An applicant for disability benefits can retroactively receive disability benefits "for up
to 12 months immediately before the month in which [the] application is filed."  20 C.F.R.
§ 404.621(a)(1); <u>accord</u> <u>Macciachera v. Shalala</u>, 892 F. Supp. 427, 432 (N.D.N.Y. 1995) (where
plaintiff applied for disability and SSI benefits,"plaintiff may receive benefits for up to twelve
months immediately before the month in which her application was filed").

"duplicate claim," the ALJ constructively reopened the first application simply by considering the merits of the present claim.  See id. at 1114-15.  Taylor's holding has no bearing on our case, however, as a person's entitlement to disability benefits can vary from one claims period to another as the nature and severity of the claimant's medical condition changes.  Finally, Coup v. Heckler, 834 F.2d 313 (3d Cir. 1987), took pains to note that it was finding a constructive reopening in part because it was "not a case where the agency explicitly considered such earlier evidence solely for the purpose of determining whether the claimant was disabled within the twelve months preceding the most recent application."  834 F.2d at 318.  Here, the ALJ specifically stated that he was determining the disability claim based on the date of the second application.  R. 21, 33.  Moreover, there is no indication that the ALJ reviewed the evidence concerning S.R.R.'s medical history for any purpose other than assessing the severity of S.R.R.'s condition during the period for which benefits were claimed in the second application.[4]

In sum, because the ALJ stated in his decision that he was deciding the merits of the second application and made no mention at all of the first application, and because it is clear that the ALJ considered the evidence relating to the earlier time period for the purpose of assessing the merits of the second application, Hussain's request to find a constructive reopening of the prior application should be denied.

IV.    CONCLUSION

For the foregoing reasons, Hussain's motion to remand (Docket # 17) and the Commissioner's cross-motion to remand (Docket # 23) should be granted to the extent consistent

---

[4] Another case cited by Hussain, Galowitz v. Astrue, 2012 WL 4762563 (S.D.N.Y. Aug. 20, 2012), does not articulate in any detail why it found a constructive reopening.  See id. at *1 n.3.

with this Report and Recommendation.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Alison J. Nathan. Any request for an extension of time to file

objections must be directed to Judge Nathan. If a party fails to file timely objections, that party

will not be permitted to raise any objections to this Report and Recommendation on appeal. See

Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,

Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 27, 2014
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge